J. S. HATCHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

A. BARNETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28742, 28743. Promulgated January 6, 1930.

*Guy Mason, Esq., C. R. McAtee, Esq.,* and *Robert A. Littleton, Esq.,* for the petitioners.

*Eugene Meacham, Esq.,* for the respondent.

634

OPINION.

Van Fossan: The sole issue in this proceeding is whether or not the amounts paid to the personal representative of B. M. Frees during the year 1922 by the Barnett Lumber Co., the J. S. Hatcher Lumber Co., and the Warren Lumber Co. out of the surplus of those corporations, in proportion to Frees' interests therein, constitute dividends taxable to Barnett and Hatcher because made and used for their benefit.

On its face the contract of May 19, 1919, was a personal agreement between B. M. Frees and A. Barnett for the sale of certain

stock by the former to the latter. That contract, however, contains provisions impossible of fulfillment without recourse to the rights and powers of the makers as stockholders and officers of the corporations mentioned therein. In order to arrive at a correct interpretation and application thereof it is proper that we consider the relationship of the parties to the contract and other pertinent facts and circumstances which may throw light on the underlying purpose and intention.

The evidence shows clearly that Frees desired and intended to withdraw from the Barnett, Hatcher, Warren, and Cox companies his full interest therein. The value of that interest was to be determined by adding his proportionate share of the surplus to the par value of the stock and was to be paid to him in installments. The value of the interest of the remaining stockholders in those corporations after his withdrawal remained the same as before. In order to effect such purpose Frees and Barnett entered into the contract of May 19, 1919, as embodying the plan by which it could be accomplished most effectively. Other interested stockholders of the corporations mentioned therein acquiesced in the arrangements and assisted in carrying them out. Certain intracorporate informalities in procedure were cured by the agreement, express and implied, of all stockholders.

Dividend distributions were made neither ratably nor by the proper and usual methods governing corporate actions. We have held, however, that such irregularities will not affect the taxable status of those benefited thereby unless the rights of third persons are impaired (*L. W. Gunby Co.*, 3 B. T. A. 714), and that by unanimous agreement among the stockholders of the corporation the profits may be divided and distributed other than ratably among the stockholders. (*Joseph Goodnow & Co.*, 5 B. T. A. 1154.)

While the contract of May 19, 1919, in its terms was a personal one between Frees and Barnett, yet it is apparent that it was utilized, and probably intended, as a means of acquiring on behalf of the several corporations the interest in them owned by Frees. Shortly after May 19, 1919, Barnett entered into contracts with Warren and Hatcher in accord with that purpose. The bookkeeping entries show that the corporations paid to Frees the approximate amount of his proportion of the surplus on hand on January 1, 1919. During the period from January 1, 1919, to January 1, 1922, Frees and his personal representatives borrowed and received advances of considerable sums from the several corporations. During 1922 the several corporations completed the payments from surplus as contemplated by the contract of May 19, 1919, and later the

deferred purchase money notes were paid in full to the Frees estate. So far as the record shows, all payments for Frees' stock in the corporation were made from the funds of those companies. The cancellation of the old Frees' stock certificates and the issuance of new certificates to the remaining stockholders in the three corporations did not serve to increase the value of their holdings. Each stockholder merely owned more shares of stock, worth in the aggregate, however, the same as before the disposal of the Frees stock.

Whatever gain or profit from this transaction was derived accrued to Frees or to his estate. In their capacity as stockholders in the corporations, Barnett and Hatcher received no taxable dividends therefrom under the contract of May 19, 1919, or through Frees' withdrawal from the companies. Their financial status was not changed. They held a larger proportionate interest in a small aggregate of assets. They neither gained nor lost by the transaction.

In our opinion, the method employed to accomplish Frees' withdrawal from the Barnett Lumber Co., the J. S. Hatcher Lumber Co., and the Warren Lumber Co. did not result in taxable gain to the petitioners.

Reviewed by the Board.

*Decision will be entered under Rule 50.*